UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIBEL D. ROSARIO CASTILLO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 06-CV-0862-WQH (JMA)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE GRANTING OF PLAINTIFF'S MOTION FOR REVERSAL AND/OR REMAND [DOC. NO. 7] AND DENIAL OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [DOC. NO. 11]** |

　　　Plaintiff Maribel D. Rosario Castillo ("Maribel")[1] seeks judicial review of Social Security Commissioner Michael J. Astrue's determination that she is not entitled to Supplemental Security Income ("SSI") benefits.  Plaintiff has filed a motion for reversal and/or remand (construed by the Court as a motion for summary judgment), and Defendant has filed a cross-motion for summary judgment.

　　　For the reasons set forth below, the Court recommends that

---

[1] Because Maribel is a minor, the complaint should have been filed by John Castillo and/or Maria Castillo, Maribel's parents, on behalf of Maribel.

Plaintiff's Motion for Reversal and/or Remand be **GRANTED,** that Defendant's Cross-Motion for Summary Judgment be **DENIED**, and that the case be remanded to the Social Security Administration ("SSA") for further administrative proceedings.

## I.   BACKGROUND

Maribel was born on August 28, 1991, and was 13 years old and in the ninth grade at the time of the administrative hearing. (Admin. R. at 23.)  She has allegedly been disabled since January 1, 2002 due to a blood disorder and mental problems.  (Id. at 83.)  Maribel's father, John Castillo, filed an application for SSI benefits on Maribel's behalf pursuant to Title XVI of the Social Security Act on June 3, 2004.  (Id. at 59-63.)  Maribel's application was denied initially on September 16, 2004, and again upon reconsideration on March 25, 2005.  (Id. at 27-31, 34-38.) An administrative hearing was conducted on November 16, 2005 by Administrative Law Judge Leland H. Spencer ("ALJ"), who determined that Maribel was not disabled and thus not eligible for SSI benefits.  (Id. at 15-24.)  The Appeals Council for the SSA declined further review.  (Id. at 4-6.)  Maribel then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.   SUMMARY OF RECORDS[2]

**A.   Maribel's School Records - San Ysidro Middle School (February 2004 - July 2004)**

The San Ysidro School District conducted an academic assessment of Maribel in February 2004.  (Id. at 140-52.)  The assessment indicated that there was a severe discrepancy between

---

[2] Plaintiff's motion focuses on Maribel's alleged *mental* rather than physical impairments; the Court has thus focused its summary of records accordingly.

Maribel's academic achievement and cognitive ability in Broad Written Language due to an Auditory Processing Deficit. (Id. at 149.) The assessment also indicated a level of depression that was above average in comparison with other children her age. (Id.) As a result, Maribel was provided with an Individualized Education Program. (Id. at 132-37.) Maribel was noted to have below average written language skills, and average reading and math skills. (Id. at 133.) She was also noted to be "at risk" in her social and emotional development in that she had "emotional problems that currently mainly affect her home life." (Id.) She was referred to the Resource Specialist program. (Id. at 137.)

On July 15, 2004, Sally Menze, Maribel's 7th grade resource specialist, completed a Teacher Questionnaire. (Id. at 124-31.) She had seen Maribel daily, for one school period, since February 2004. (Id. at 124.) Ms. Menze indicated that Maribel had obvious problems with expressing ideas in written form, organizing her own things and school materials, and completing class and homework assignments. (Id. at 125-26.) She also noted that Maribel's auditory processing deficit made carrying out multi-step directions difficult. (Id. at 126.) Ms. Menze did indicate that Maribel had made substantial progress in meeting her English written language and auditory processing skills goals. (Id. at 131.)

**B.   Roberto J. Velasquez, Ph.D - Examining Psychologist (August 2004)**

Dr. Roberto J. Velasquez conducted a psychological evaluation of Maribel at the request of the Department of Social

Services on August 5, 2004.  Maribel's parents described the following symptoms to Dr. Velasquez: anxiety, poor concentration, mistrust of others, depression, hyperactivity, forgetfulness, and irritability.  (Id. at 156.)  They indicated that Maribel was being seen by a counselor, Leticia Velasquez, at the Youth Enhancement Services (YES) Program in San Ysidro, and that she had an appointment with a psychiatrist at the facility, Dr. Fajerman, the following week to be evaluated for psychotropic medication.  (Id. at 155-56.)

Dr. Velasquez conducted a mental status examination, and found Maribel to possess below average social skills, to be immature for her age, and to have a vocabulary significantly below that of a person of her age and level of education.  (Id. at 156.)  He administered the Wechsler Intelligence Scale for Children-IV (WISC-IV) and determined that Maribel had a Verbal Comprehension Index score of 65, a Perceptual Reasoning Index score of 92, and a Working Memory Index score of 86.  The Perceptual Reasoning and Working Memory indexes were within an acceptable range.  The Verbal Comprehension score, however, indicated a significant impairment involving problems with comprehension and acquisition of knowledge, use of information in daily functioning, and poor vocabulary.  (Id.)  Dr. Velasquez also found that Maribel's scores on reading, spelling, and arithmetic tests were significantly below her grade level.  (Id.)  Dr. Velasquez diagnosed Rule Out Expressive Language and/or Receptive Disorder and Rule Out Borderline Intellectual Functioning, and assessed Maribel's Global Assessment of

Functioning (GAF) score to be 45. (Id. at 157.)[3]

Dr. Velasquez concluded that Maribel was not capable of completing detailed and complex tasks, but could complete some simple and repetitive tasks; that she was not likely to possess a long attention span or patience; that she had the capacity to understand very simple instructions, but would have major problems with advanced or complex instructions; that she would require assistance in building up her social skills; and that she was not able to handle the usual stresses encountered in a competitive school setting. (Id.)

**C.   San Ysidro Health Center - Treating Physicians
     (September 2003 - January 2005)**

The majority of Maribel's records from the San Ysidro Health Center pertain to treatment of her physical health issues, including idiopathic thrombocytopenic purpura ("ITP"), a bleeding disorder, and left knee injuries. The records do, however, contain reference to Maribel's mental issues as well. In March 2004, Maribel was refusing to go to school. (Id. at 202.) In November and December 2004, Maribel was found to have self-inflicted scratches and abrasions on her body, and a self-inflicted burn on her hand. (Id. at 190, 192.)

---

[3]The Global Assessment of Functioning scale, or GAF scale, is a numeric scale (0 through 100) used by mental health practitioners to rate social, occupational, and psychological functioning, with lower numbers representing more severe symptoms, difficulties, or impairments. The scale is presented in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). See http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (as visited May 7, 2007). A GAF score between 41 and 50 suggests "Serious symptoms OR any serious impairment in social, occupational, or school functioning." Id.

**D.   Leon Fajerman, M.D. - Treating Psychiatrist
     (September 2004 - March 2005)**

Dr. Leon Fajerman of the YES Program saw Maribel one time per month between September 2004 and March 2005. (Id. at 236.) In March 2005, he indicated that Maribel's diagnoses included Depressive Disorder, "ODD" (Oppositional Defiant Disorder) and "PTSD" (Post-Traumatic Stress Disorder). (Id.) He found, *inter alia*, that Maribel had poor impulse control, was apathetic, that her mood and affect were "often inappropriate," that her judgment was moderately impaired, and that her progress in treatment was "slow and limited due to personal and family psychopathology." (Id. at 236-38.)

Dr. Fajerman opined that Maribel had "poor" abilities to maintain concentration, attention and persistence; to complete a normal workday and workweek without interruptions from psychologically based symptoms; and to respond appropriately to changes in a work setting. (Id. at 238.) He rated her abilities to understand, remember, and carry out complex instructions, and to perform activities within a schedule and maintain regular attendance, as "fair," and her ability to understand, remember, and carry out simple instructions as "good." (Id.)

**E.   Paradise Valley Hospital - Treating Physicians
     (April 2005)**

Maribel attempted suicide with a razor blade on April 3, 2005. (Id. at 105.) She was hospitalized for five days at Paradise Valley Hospital due to her suicide attempt. (Id. at 107, 249.) A head CT scan taken at the hospital on April 6, 2005 to determine a possible cause of Maribel's headaches, nightmares,

and aggressive behavior was negative. (Id. at 250.)

**F. Robert Littman, M.D. - Treating or Examining Psychiatrist[4] (July 2005)**

Dr. Robert Littman of the County of San Diego conducted an mental status examination of Maribel on July 26, 2005. (Id. at 264-65.) He diagnosed Bipolar II and a cannabis dependency, and determined that Maribel's GAF score was 35. (Id. at 265.)[5] He recommended that Maribel continue taking Zoloft (an antidepressant) and Risperdal (an antipsychotic medication), that she participate in individual, family and group therapy, and that she be admitted to the Day Treatment Program (apparently offered by or through the school district). (Id. at 264-65.)

**G. Maribel's School Records - Southwest Senior High School (November 2005)**

Another Individualized Education Program was created for Maribel in November 2005. (Id. at 253-60.) Maribel was found to be in the 34th percentile for reading, 9th percentile for writing, 30th percentile for math, and 7th percentile for functional skills. (Id. at 254.) Maribel's behavior, described as "distractable, off-task and withdrawn," was noted to impede her learning. (Id. at 255.) Maribel had made progress, however, since entering the Day Treatment Program, and her motivation and behavior were noted to have been "good." (Id. at 260.)

//

---

[4] The record is unclear as to whether Dr. Littman was a treating or examining physician.

[5] A GAF score between 31 and 40 reflects, "Some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." See http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning (as visited May 7, 2007).

### III. THE ADMINISTRATIVE HEARING

**A. Father's Testimony**

Maribel's father testified at the administrative hearing on her behalf. He testified that Maribel's behavior at home was "not very good" and that she had problems controlling her temper, taking care of herself, taking her medications on time, with concentrating, and with following rules. (Id. at 277.) He also testified that Maribel was not in a "regular school" but rather was attending "special classes." (Id. at 281.)

**B. Medical Expert Testimony**

Medical expert witness Kent B. Layton ("ME"), a clinical psychologist, also testified at the hearing. He testified that he had reviewed the medical records in the case. (Id. at 282.) He stated that Maribel's diagnosis was "Bipolar number two" and that her prognosis was good as "Bipolar twos" do well with proper medication. (Id. at 283, 286-87.) He testified that he had not, however, seen a list of Maribel's medications. (Id. at 283, 286.) He opined that the verbal IQ of 65 found by Dr. Velasquez was not valid as the Wechsler test and Maribel's school records indicated that she had a low average to average range of intelligence in most areas. (Id. at 287-89.) He also observed that these tests had been conducted before Maribel was on medication. (Id. at 288.) The ME testified further that he disagreed with the GAF scores of 35 and 45. (Id.)

With respect to the six domains of functioning considered in childhood disability cases,[6] the ME testified that Maribel's

---

[6] See *infra* section V. B. for a more detailed description of the six domains of functioning.

limitations were "less than marked" in four of the domains (acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects) and "none" in one of the domains (caring for self). (Id. at 286.)[7]

## IV. THE ALJ DECISION

After considering the record, ALJ Spencer made the following findings:

. . . .

2. The child has not engaged in substantial gainful activity since the alleged onset date [citation omitted].

3. The child has "severe" impairments [citation omitted].

4. The child's bipolar disorder, language disorder, thrombocytopenia, and left knee patellar dislocation with instability do not meet or medically equal the severity of the impairment[s] listed in [the Social Security Regulations].

5. The child does not have an "extreme" limitation in any domain of functioning, a "marked" limitation in two domains of functioning, and does not functionally equal the severity of the listings [citations omitted].

6. The claimant's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision.

7. The claimant has not been under a "disability," at any time from the alleged onset date through the date of the decision [citation omitted].

(Id. at 23.)

## V. LEGAL STANDARDS

**A. Judicial Review**

Sections 205(g) and 1631(c)(3) of the Social Security Act

---

[7]The ALJ reserved determination on the sixth domain (health and physical well-being) for himself.

9

06cv0862

allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings of fact are not supported by substantial evidence or (2) the ALJ failed to apply the proper legal standards. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

The term "substantial evidence" refers to evidence that a reasonable person might accept as adequate to support the ALJ's conclusion, considering the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence means "more than a scintilla but less than a preponderance" of the evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Even if the ALJ's findings are supported by substantial evidence, they must be set aside if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the SSA for further proceedings. Id.

**B.   Governing SSA Regulations for Defining Childhood Disability**

To qualify for disability benefits under the Social Security Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382a(3)(C)(i).

The SSA has enacted a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability.  20 C.F.R. § 416.924(a) (2006).  First, the ALJ considers whether the child is engaged in "substantial gainful activity."  Id. at § 416.924(b).  Second, the ALJ considers whether the child has a "medically determinable impairment(s) that is severe," which is defined as an impairment that causes "more than minimal functional limitations."  Id. at § 416.924(c).  Third, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments" in the regulations.  See id. at § 416.924(d) & pt. 404, subpt. P, app. 1.

A child's impairment will "medically equal" a listed impairment if the medical findings are "at least equal in severity and duration to the criteria of any listed impairment."  Id. at § 416.926(a).  A child's impairment will be found "functionally equivalent" to a listed impairment if the child's condition results in a "marked" limitation in two of six domains of functioning or an "extreme" limitation in one of the six

domains. The six domains of functioning are intended to capture all of what a child can or cannot do, and include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. at § 416.926a(a)-(b). An impairment is a "marked" limitation if it "interferes seriously with [the] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." Id. An "extreme" limitation is one that "interferes *very* seriously with [the] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(3)(i) (emphasis added). "Extreme" limitation is the rating given to the worst limitations. Id.

## VI. DISCUSSION

Plaintiff contends that the ALJ's decision to deny her claim for SSI benefits was legally improper and was not supported by substantial evidence. Plaintiff argues, in particular, that the ALJ erred by rejecting the opinions of Drs. Velasquez, Fajerman and Littman regarding her mental condition in favor of the opinion of the ME, a non-examining, non-treating physician, as well as the ALJ's own opinion.

Here, steps 1 and 2 of the three-step sequential analysis applied to childhood disability cases are not in dispute, as the ALJ found that Maribel has not engaged in substantial gainful activity (step 1) and that her impairments are "severe" (step 2). Therefore, the Court must determine whether the ALJ's finding at

step 3 -- that Maribel's impairments do not "medically equal" or "functionally equal" a disability listed in the Listing of Impairments -- is supported by substantial evidence and free of legal error.

**A.  The ALJ Erred In His Consideration of the Opinions of Drs. Velasquez, Fajerman and Littman**

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (nonexamining physicians). <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); <u>see</u> <u>also</u> 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a nonexamining physician's opinion. <u>Lester</u>, 81 F.3d at 830. While the ALJ may disregard a treating physician's opinion regardless of whether that opinion is contradicted, <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989), "where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons" supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830 (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991)). The same rule applies to the opinions of an examining physician in the absence of any legitimate conflicting testimony and any reason for the ALJ's rejection of the examining physician's opinion. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

If the treating physician's opinion is contradicted by

another doctor, it may be rejected only for "specific and legitimate" reasons supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)). Similarly, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician when the ALJ gives specific and legitimate reasons supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Magallanes</u>, 881 F.2d at 751 (citing <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1408 (9th Cir. 1986)).

In this case, although the ALJ briefly mentioned the reports of Drs. Velasquez (examining physician), Fajerman (treating physician) and Littman (examining or treating physician) in his summary of Maribel's medical records (<u>see</u> Admin. R. at 17), he did not explicitly "reject" any of these doctors' opinions or findings. Rather, he simply ignored them throughout the rest of his decision. The ME, while testifying at the administrative hearing, contradicted portions of the opinions of Drs. Velasquez (verbal IQ and GAF score) and Littman (GAF score), and rendered a different diagnosis than Dr. Fajerman (Bipolar II versus Depressive Disorder, ODD and PTSD). To the extent the treating and examining doctors' opinions were contradicted, then, the ALJ was required to proffer specific, legitimate reasons to reject or discount the opinions. Although the ALJ appears to have implicitly rejected the opinions of the doctors by ignoring them

and relying virtually exclusively instead upon the opinions of the ME and of the state agency reviewing physicians, this was not a sufficient rejection of the treating and examining doctors' opinions under the relevant authority.  See, e.g., Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989) (finding that the ALJ's failure to offer any reasons as to why he disregarded the claimant's treating physician's opinions was error); Lester, 81 F.3d at 830-31 (requiring articulation of specific and legitimate reasons supported by substantial evidence to discount testimony of examining physicians).

Additionally, it was insufficient for the ALJ to merely rely on the fact that the ME and the state agency reviewing physicians had reviewed all evidence in the record in giving their opinions more weight than the opinions of the treating and examining physicians.  Unless the opinions of a nontreating source are based on independent clinical findings, they may serve as substantial evidence only when they are supported by and consistent with other evidence in the record.  See Andrews, 53 F.3d at 1041.  The opinions of the ME and of the state agency reviewing physicians, none of whom ever examined Maribel, were not based on their own independent clinical findings and were not consistent with all other evidence in the record, and thus their opinions alone could not constitute substantial evidence.  See Andrews, 53 F.3d at 1041.  In fact, the Court views the ME's opinion, in particular, to be questionable.  For example, despite stating that he had reviewed Maribel's records in full, and basing at least a part of his opinion that Maribel had "less than marked" functional limitations on the presumption that

medications were helping her, the ME was unable to testify as to which medications Maribel was taking. See Admin. R. at 283, 286.

Moreover, the ALJ is responsible for resolving conflicts in the medical testimony and resolving ambiguities. Id. at 1039. Determining whether inconsistencies are material, or are in fact inconsistencies at all, falls within the ALJ's responsibility. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they . . . are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ, by not providing any meaningful discussion of the observations and findings of Drs. Velasquez, Fajerman and Littman, and by not resolving the inconsistencies in the record regarding Maribel's mental diagnoses and functional limitations, failed to meet these requirements.

In sum, the record does not support the ALJ's implicit rejection of, or failure to adequately discuss, the opinions of Drs. Velasquez, Fajerman and Littman. The Court finds, absent a proper rejection or discounting of these doctors' opinions, that their opinions should have been considered at the ALJ's step three analysis of whether Maribel's impairments "medically equaled" or "functionally equaled" a disability listed in the Listing of Impairments. The regulations require as much. See 20 C.F.R. § 416.926(c) (when determining if an impairment medically equals a listing, the SSA considers "*all* evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding") (emphasis added); id. at § 416.926a(e)(1)(i) (when determining if an impairment results in a

06cv0862

"marked" or "extreme" limitation, for the purpose of deciding whether the impairment functionally equals a listing, the SSA considers "*all* the relevant information in your case record that helps . . . determine your functioning . . . .") (emphasis added). The observations and opinions of Drs. Velasquez, Fajerman and Littman are certainly pertinent to Maribel's functional limitations, and, absent a proper rejection of those opinions, should have been considered by the ALJ in reaching his decision. As the ALJ's decision currently stands, the ALJ's findings as to Maribel's functional limitations are not supported by substantial evidence, and the ALJ erred by not giving proper consideration to the treating and examining doctors' opinions in determining her limitations.

**B.   Remand is Appropriate**

"If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Accordingly, remand is proper in this case. See McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) ("[A] remand for further proceedings is appropriate. There may be evidence in the record to which the Secretary can point to provide the requisite specific and legitimate reasons for disregarding the testimony of [the] treating physician. Then again, there may not be. In any event, the Secretary is in a better position than this court to perform this task.").

### VII.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reversal and/or Remand should be **GRANTED,** Defendant's Cross-

Motion for Summary Judgment should be **DENIED**, and the case should be remanded to the Social Security Administration for further administrative proceedings consistent with the discussion above.

This report and recommendation will be submitted to the Honorable William Q. Hayes, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **June 7, 2007**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **June 21, 2007**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  May 17, 2007

_____
Jan M. Adler
U.S. Magistrate Judge